**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LAURA HOFF, | § | CIVIL ACTION NUMBER |
| PLAINTIFF, | § | **4:25-cv-02598** |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| MICHAEL EALY AND | § | |
| NASSAU INVESTMENTS, LLC, | § | |
| DEFENDANTS. | § | |

**PLAINTIFF'S MOTION TO REINSTATE CASE AND FOR RELIEF FROM
ORDER OF DISMISSAL PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 60(b)**

TO THE HONORABLE CHARLES ESKRIDGE, UNITED STATES DISTRICT
JUDGE:

Plaintiff Laura Hoff, by and through her undersigned counsel, respectfully files this

Motion to Reinstate Case and for Relief from the Order of Dismissal entered on May 14,

2026 (Dkt. 18), pursuant to Rule 60(b)(1) and Rule 60(b)(6) of the Federal Rules of Civil

Procedure.  Plaintiff respectfully shows the Court that the underlying procedural default

was the product of excusable neglect arising from a substantial law-firm transition by

Plaintiff's counsel; that the parties had, in fact, jointly executed the Joint Discovery and

Case Management Plan in advance of the Court's April 15, 2026 deadline and that the

document was, through inadvertence, simply not filed; and that the Court itself invited a

Rule 60(b) showing in its dismissal order.  See Dkt. 18 ("The Court will grant relief upon

1

a proper showing under Rule 60(b) of the Federal Rules of Civil Procedure.").  In support of this Motion, Plaintiff respectfully shows the Court as follows:

## I.    INTRODUCTION

This case should be reinstated.  Three main facts compel that conclusion.  *First*, the Joint Discovery and Case Management Plan that the Court had ordered the parties to file by April 15, 2026 was, in substance, timely prepared and fully executed: defense counsel Cornelius "Carl" Lewis signed the Plan via DocuSign on March 30, 2026, and Plaintiff's counsel Dustin Webber signed it on April 2, 2026—thirteen days before the Court's deadline.  A true and correct copy of the executed Plan, together with its DocuSign Certificate of Completion, is attached hereto as Exhibit A.  The parties' substantive obligations under Section 9(b) of this Court's procedures were satisfied; only the ministerial act of uploading the signed Plan to the docket was not completed.

*Second*, the failure to file was caused not by indifference to this litigation but by a substantial transition of Plaintiff's representation from Indigo Legal Solutions, PLLC to Nelson Mullins Riley & Scarborough LLP.  During that transition, the staff members at Indigo Legal who had been responsible for docket management and electronic filing departed, and conflicts-of-interest clearances at the receiving firm—an ethical prerequisite under Texas Disciplinary Rules of Professional Conduct 1.06 and 1.09 and a routine condition for substitution at firms of any size—had to be completed before Nelson Mullins personnel could begin substantive work on Plaintiff's open matters.  The Plan, although signed and stored, was caught in the gap between systems and never delivered to the Clerk.

*Third*, Defendants suffer no prejudice from reinstatement. They signed the very document whose absence triggered dismissal. They cannot credibly claim surprise or disadvantage from the filing of the joint paper they themselves agreed to. The interests of judicial economy, the strong and consistently reiterated preference of the Fifth Circuit for adjudication on the merits, and the Court's own invitation to make a Rule 60(b) showing all weigh decisively in favor of reinstatement.

For the reasons set forth more fully below, Plaintiff respectfully requests that the Court vacate its Order of Dismissal (Dkt. 18), reinstate this action upon the docket, accept for filing the executed Joint Discovery and Case Management Plan attached as Exhibit A, and reset the Initial Pretrial and Scheduling Conference at the Court's earliest convenience.

## II.    PROCEDURAL BACKGROUND

This is a diversity action arising under 28 U.S.C. § 1332(a)(1), in which Plaintiff Laura Hoff alleges that Defendants Michael Ealy and Nassau Investments, LLC induced her to pay $50,000 in exchange for participation in a purported real-estate mentorship program known as the "Hotel Protégé Program," and thereafter failed to deliver the promised benefits. Plaintiff asserts claims for breach of contract, violations of the Texas Deceptive Trade Practices–Consumer Protection Act, common-law fraud, and unjust enrichment.

The procedural history of relevance to this Motion is as follows:

1.      On March 17, 2026, the Court entered an Order (Dkt. 16) noting that the parties had not filed a Joint Discovery/Case Management Plan in accord with Section 9(b) of the Court's procedures, directing that such Plan be submitted by April 15, 2026, and resetting the Initial Conference to April 22, 2026, at 2:30 p.m.

2.      The parties conferred in accordance with Federal Rule of Civil Procedure 26(f), engaged in negotiation over the terms of a Joint Plan, and reduced their agreement to writing.  The Plan was transmitted for execution by DocuSign on March 30, 2026, at 1:37:33 p.m. (Pacific Time).  Defense counsel Cornelius "Carl" Lewis executed the Plan on the same day at 1:38:58 p.m. Pacific Time.  Plaintiff's counsel Dustin Webber executed the Plan on April 2, 2026, at 12:46:57 p.m. Pacific Time, and the DocuSign envelope was marked Completed at that time.  See Ex. A (Joint Discovery and Case Management Plan and Certificate of Completion).  The fully executed Plan was, however, never uploaded to the Court's docket.

3.      On April 24, 2026, the Court entered an Order (Dkt. 17) observing that the parties had again failed to file the Joint Plan, canceling the April 22, 2026 Initial Conference, and directing Plaintiff to show cause by May 10, 2026 why the action should not be dismissed for want of prosecution.

4.      No response to the show-cause Order was filed by May 10, 2026, again as the result of the transition described below.

5.      On May 14, 2026, the Court entered the Order of Dismissal (Dkt. 18), dismissing the action without prejudice for want of prosecution and expressly providing:

"The Court will grant relief upon a proper showing under Rule 60(b) of the Federal Rules of Civil Procedure.  See Link v. Wabash Railroad Co., 370 U.S. 626, 635 (1962)."  Dkt. 18.

6.    The Order of Dismissal was entered on the docket on May 15, 2026.  This Motion is filed promptly thereafter and well within the one-year period authorized by Rule 60(c)(1) for motions premised on Rule 60(b)(1).  See Fed. R. Civ. P. 60(c)(1).

### III.    FACTUAL BACKGROUND OF THE PROCEDURAL DEFAULT

During the period in which the Court's April 15, 2026 deadline and May 10, 2026 show-cause deadline fell, Plaintiff's representation was undergoing a substantial transition from Indigo Legal Solutions, PLLC—the small Houston firm at which Dustin Webber had served as Managing Attorney—to the considerably larger firm of Nelson Mullins Riley & Scarborough LLP.  That transition produced an unintended discontinuity in case-management capacity, the details of which are set forth in the accompanying Declaration of Dustin Webber (Ex. B) and may be summarized as follows.

First, the legal assistant and paralegal personnel responsible for calendaring, document execution workflow, and ECF filing at Indigo Legal Solutions ceased to be available to support Plaintiff's file in connection with the move.  Their access to the firm's prior matter-management and DocuSign systems lapsed, and the executed Plan, while stored within the original DocuSign envelope, was not transmitted forward to the staff cohort that would have filed it.

Second, at the receiving firm, undersigned counsel could not direct any new support personnel to handle the substantive aspects of Plaintiff's file—including the ministerial filing of the executed Joint Plan and any responsive showing on Dkt. 17—until the firm's standard conflicts-of-interest clearance had been completed.  As the Court is fully acquainted, conflicts clearance is not an optional administrative convenience; it is an ethical prerequisite mandated by Texas Disciplinary Rules of Professional Conduct 1.06 and 1.09 and by analogous obligations under American Bar Association Model Rules 1.7 and 1.9.  *See also* ABA Model Rule 1.10 (imputation of conflicts within a firm).  The clearance process at a multi-office firm cannot, as a matter of professional responsibility, be short-circuited, even where the receiving lawyer is reasonably confident no conflict exists.

Third, the practical consequence of those two circumstances was a discrete window—covering both the April 15, 2026 filing deadline and the May 10, 2026 show-cause deadline—in which no support staff was authorized to monitor the docket, the executed Plan, or to prepare a responsive filing under counsel's direction.  The substantive obligations of the parties had been met; the administrative pipeline necessary to deliver that work to the Court had been interrupted.

Counsel offers these facts not in derogation of the obligation that ultimately rests on counsel of record under *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962), and acknowledges that responsibility for compliance with this Court's orders attaches to counsel personally regardless of administrative breakdown.  The facts are offered instead

6

to satisfy the third *Pioneer* factor—reason for the delay—and to demonstrate that the failure was the product of organizational disruption rather than indifference, contumacy, or strategic delay.

## IV.    LEGAL STANDARD

### A. <u>Rule 60(b)(1): Excusable Neglect.</u>

Federal Rule of Civil Procedure 60(b)(1) authorizes a district court, on motion and upon "just terms," to "relieve a party . . . from a final judgment, order, or proceeding" where the failure to comply is the product of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).  The governing standard for excusable neglect is supplied by the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), which the Fifth Circuit has expressly adopted for purposes of Rule 60(b)(1) and related civil contexts.  *See Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 468 (5th Cir. 1998); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161–62 (5th Cir. 2006); *Coleman Hammons Constr. Co. v. OSHRC*, 942 F.3d 279, 282–83 (5th Cir. 2019).

Under *Pioneer*, the inquiry is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395.  The Supreme Court identified four non-exclusive factors that govern the analysis: (1) the danger of prejudice to the nonmoving party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the

7

reasonable control of the movant; and (4) whether the movant acted in good faith. *Id.*; *Adams*, 465 F.3d at 161–62.

Critically for present purposes, the *Pioneer* Court rejected the proposition that "excusable neglect" is confined to circumstances beyond the movant's control. The Court held that "inadvertence, ignorance of the rules, or mistakes construing the rules" do *not* by themselves disqualify a movant from relief, and that "the concept of 'excusable' neglect can encompass situations in which the failure to comply with a filing deadline is attributable to negligence." 507 U.S. at 392, 394. The Fifth Circuit has echoed this principle, recognizing that even "negligence" and "inadvertent" oversight by counsel may, in light of the totality of circumstances, qualify as excusable neglect. *See Halicki*, 151 F.3d at 469.

## B. Rule 60(b)(6): Any Other Reason That Justifies Relief.

Rule 60(b)(6) authorizes relief from a final order for "any other reason that justifies relief" and exists "to accomplish justice" in circumstances not captured by Rule 60(b)(1)–(5). *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005). Although relief under Rule 60(b)(6) requires "extraordinary circumstances," *Buck v. Davis*, 580 U.S. 100, 123 (2017), the Fifth Circuit has emphasized that the Rule is to be applied with "due regard for the rule's purpose of preserving the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of all the facts." *Seven*

*Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401–02 (5th Cir. 1981) (internal quotation marks omitted).

### C. The Fifth Circuit's Strong Preference for Adjudication on the Merits.

Both Rule 60(b) and the related body of law governing dismissals for want of prosecution are animated by a controlling policy: federal courts in this Circuit "solidly committed to the position that issues should be decided on their merits whenever reasonably possible." *Rogers v. Hartford Life & Acc. Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *accord Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 848 (5th Cir. 1996) ("[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."); *Seven Elves*, 635 F.2d at 401 (Rule 60(b) is to be "liberally construed" in furtherance of the policy favoring adjudication on the merits).

For substantially the same reason, the Fifth Circuit has long instructed that dismissal for want of prosecution—though within the inherent authority of the district court, *Link*, 370 U.S. at 630–31—is "an extreme sanction that deprives the litigant of the opportunity to pursue his claim" and should be "reserved for cases of egregious and sometimes outrageous delays." *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992) (citations omitted). Even where dismissal is technically without prejudice, where its practical effect may be to bar refiling because of limitations or similar considerations, the Fifth Circuit treats it as functionally a dismissal with prejudice and applies the more demanding standard accordingly. *See Boudwin v. Graystone Ins. Co.*, 756 F.2d 399, 401 (5th Cir. 1985).

## V. ARGUMENT

### A. The Court Invited a Rule 60(b) Showing, and Plaintiff Makes That Showing.

The Court's Order of Dismissal expressly contemplated this Motion, instructing that "[t]he Court will grant relief upon a proper showing under Rule 60(b) of the Federal Rules of Civil Procedure." Dkt. 18 (citing *Link*, 370 U.S. at 635). Plaintiff respectfully submits that what follows constitutes such a showing: the executed Plan attached as Exhibit A demonstrates that the parties' substantive obligations under the Court's March 17, 2026 Order had in fact been satisfied; the Declaration of Dustin Webber attached as Exhibit B explains the discrete administrative breakdown that prevented its filing; and the application of the four *Pioneer* factors to those facts, set forth below, establishes excusable neglect under Rule 60(b)(1).

### B. Relief Is Warranted Under Rule 60(b)(1) Because Each of the Four *Pioneer* Factors Favors Reinstatement.

#### 1. Defendants Will Not Be Prejudiced by Reinstatement.

The first *Pioneer* factor asks whether the nonmoving party will suffer prejudice if relief is granted. 507 U.S. at 395. The Fifth Circuit has clarified that "prejudice" in this sense means something more than "mere delay" or the loss of a tactical windfall; it requires a showing that the nonmoving party's ability to litigate the case on the merits has been impaired in some concrete way, such as through the loss of evidence, the dissipation of witnesses' memories, or the increased difficulty of discovery. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 293 (5th Cir. 2000); *Berry*, 975 F.2d at 1191.

10

No such prejudice exists here.  The pleadings are closed, the parties have exchanged Rule 26(f) positions, and Defendants' counsel personally signed the Joint Plan whose absence triggered dismissal.  Defendants cannot plausibly claim that filing the document they themselves negotiated and executed will compromise their ability to defend this action.  To the contrary, reinstatement preserves precisely the discovery schedule and case-management framework that both parties bargained for.  Discovery has not yet opened in earnest; no depositions have been taken; no documents have been irretrievably lost.  The discrete delay between mid-April 2026 and the date this Motion is heard is, in any reasonable view, immaterial to the merits.

### 2. *The Length of the Delay Is Modest and Has Not Disrupted Judicial Proceedings.*

The second *Pioneer* factor weighs the length of the delay and its impact on judicial administration.  507 U.S. at 395.  The default at issue here is measured in weeks, not months or years.  The Joint Plan was due April 15, 2026; the show-cause response was due May 10, 2026; the Order of Dismissal was entered May 14, 2026, and docketed May 15, 2026; this Motion is filed promptly thereafter.  The Fifth Circuit has held that excusable neglect may be found even where the delay extends well beyond such a window.  *See, e.g.*, *Coleman Hammons*, 942 F.3d at 284–85 (finding excusable neglect notwithstanding lengthy delay).

Equally important, no significant judicial resources have been expended in reliance on the dismissal.  The Initial Conference, twice reset *sua sponte*, has not been held; no scheduling order has been entered; no discovery rulings have issued.  The Court's calendar

11

will not be meaningfully disturbed by reinstatement.  The marginal cost to the docket of vacating the dismissal and resetting an initial conference is small; the cost of refusing to do so—either dismissing a meritorious fraud claim or forcing its refiling with its attendant filing fees, service of process, and renewed Rule 26(f) conferral—is comparatively substantial.

### 3.  *The Reason for the Delay—A Substantial Firm Transition with Mandatory Conflicts Clearance—Constitutes Excusable Neglect.*

The third *Pioneer* factor asks why the deadline was missed and whether the cause was within the movant's reasonable control.  507 U.S. at 395.  As *Pioneer* itself makes clear, even "inadvertence" and "negligence" of counsel are not categorically disqualifying; what matters is the totality of the circumstances.  507 U.S. at 392, 394.

Here, the cause was neither indifference nor strategic.  It was the dual disruption produced by (i) the departure of the support staff at Plaintiff's prior firm who had historically handled docket management and ECF filing for this matter, and (ii) the necessary delay at the receiving firm pending completion of conflicts-of-interest clearance before new personnel could be directed to undertake substantive work.  The latter is not an administrative nicety but a binding ethical requirement.  Texas Disciplinary Rules of Professional Conduct 1.06 and 1.09 prohibit a lawyer from undertaking representation where it would create a conflict of interest with another current or former client of the lawyer or the lawyer's firm; Rule 1.10 (analogous to ABA Model Rule 1.10) imputes those conflicts within the firm.  The duty of competent supervision under Rule 5.01 requires that staff working on a matter do so under conditions that comply with these rules.  A firm

12

cannot deploy paralegal or administrative resources to a new matter until the requisite clearances are complete, and the Fifth Circuit has not faulted counsel for adhering to such ethical strictures. *Cf. Pioneer*, 507 U.S. at 394 (recognizing that excusable neglect may exist where the omission was caused by circumstances such as personnel changes and workload pressures attendant to ordinary practice).

Plaintiff does not contend that the firm transition wholly excused her counsel of his personal duty under *Link* to monitor the docket and ensure compliance with the Court's orders. But the *Pioneer* framework does not require that the cause of delay be wholly outside counsel's control; it requires only that, weighed against the other equitable factors, the cause supports a finding of excusable rather than inexcusable neglect. *Pioneer*, 507 U.S. at 392; *Halicki*, 151 F.3d at 469. A discrete, time-limited transition between firms— with documented ethical bottlenecks at the receiving firm and the simultaneous departure of support staff at the prior firm—falls comfortably on the excusable side of that line.

### 4. *Plaintiff and Her Counsel Have Acted Throughout in Good Faith, As the Timely Execution of the Joint Plan Conclusively Demonstrates.*

The fourth *Pioneer* factor asks whether the movant has acted in good faith. 507 U.S. at 395. On that question there can be little debate. Within the window between the Court's March 17, 2026 Order and the April 15, 2026 deadline, Plaintiff's counsel conducted the Rule 26(f) conference with Defendants' pro hac vice counsel, drafted a comprehensive seven-page Joint Plan addressing each of the elements required by Section 9(b) of this Court's procedures, circulated that Plan via DocuSign, and obtained the signatures of both parties' counsel *in advance of the Court's deadline*. The Plan addresses

jurisdiction, case background, stipulated facts, parties, the full scope of contemplated discovery, scheduling, settlement (with an agreement to participate in court-ordered mediation under Local Rule 16.4), and trial logistics. Counsel was not avoiding his obligations; he was meeting them, save for the final ministerial step that the firm transition disrupted.

This is not a case in which a litigant disregarded the Court's deadline and then sought to manufacture an excuse after dismissal. It is a case in which the litigant did the substantive work, on time, and then—during a documented institutional transition—failed to perform the ministerial act of delivering the work to the Court. Good faith could scarcely be more concretely demonstrated than by the executed document attached as Exhibit A.

### C. Relief Is Independently Warranted Under Rule 60(b)(6) on the Particular Facts of This Case.

Even if the Court were to conclude that Rule 60(b)(1) does not fully cover the present situation, Rule 60(b)(6) provides an independent basis for relief. The combination of features that this case presents—the substantive compliance evidenced by the fully executed Joint Plan, the discrete administrative breakdown caused by a firm transition and mandatory conflicts clearance, the absence of any prejudice to Defendants, the Court's own express invitation of a Rule 60(b) showing, and the substantial sum and serious fraud-based claims at issue—constitutes the kind of "extraordinary circumstances" in which Rule 60(b)(6) provides a residual safety valve. *Buck v. Davis*, 580 U.S. 100, 123 (2017); *Hesling*, 396 F.3d at 642; *Seven Elves*, 635 F.2d at 401–02.

14

**D. The Fifth Circuit's Strong Policy Preference for Adjudication on the Merits Reinforces Each of the Foregoing Grounds.**

Whatever the precise weighting of the *Pioneer* factors in this case, the Fifth Circuit's consistent and emphatic instruction that "issues should be decided on their merits whenever reasonably possible," *Rogers*, 167 F.3d at 936, settles any residual doubt. Plaintiff's allegations—that Defendants induced her to invest $50,000 in a real-estate mentorship scheme that they did not perform—concern a substantial sum and engage statutory protections (the Texas Deceptive Trade Practices–Consumer Protection Act, Tex. Bus. & Com. Code § 17.41 *et seq.*) that the Texas Legislature has identified as warranting heightened remedies. Defendants have already appeared, answered, and engaged in case-management discussions. The merits of the dispute are, at minimum, fairly raised. Where a substantive case stands ready to be tried and the dismissal rests on a curable procedural lapse, the Fifth Circuit has not hesitated to reverse refusals to grant Rule 60(b) relief. *See, e.g.*, *Seven Elves*, 635 F.2d at 403; *Williams v. Brown & Root, Inc.*, 828 F.2d 325, 326 – 327 (5th Cir. 1987).

**E. The Joint Discovery and Case Management Plan Stands Ready for Filing, Permitting Immediate Resumption of Proceedings.**

A further consideration weighs heavily in favor of reinstatement: there is nothing left for the parties to negotiate. The Joint Plan attached as Exhibit A is complete, fully executed by counsel for both sides, and ready to be entered upon the docket the moment the Court vacates the dismissal. Reinstatement here does not place the Court in the position of restarting case management from zero; it places the Court in precisely the position it

would have occupied had the original deadline been met.  Plaintiff is prepared to lodge the Plan as an Exhibit to this Motion, to refile it as a stand-alone docket entry upon reinstatement, or to proceed in any other manner the Court directs.

Plaintiff further represents that, upon reinstatement, she will appear at any initial conference the Court schedules, will comply promptly with all subsequent deadlines under the Plan and any forthcoming scheduling order, and stands ready to exchange Rule 26(a)(1) initial disclosures within fourteen (14) days of reinstatement, as the Plan provides.

## VI.   CONCLUSION AND PRAYER

Plaintiff acknowledges and accepts that the failure to file the Joint Plan and to respond to the show-cause Order should not have occurred.  But Rule 60(b) exists for exactly this kind of situation: a litigant who has substantively done the required work, who has acted throughout in good faith, who has caused no prejudice to her opponent, and who has met with an administrative misfortune during a discrete and explicable institutional transition.  The Court itself has signaled that such a showing, properly made, will support relief.

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  GRANT this Motion;

2.  VACATE the Order of Dismissal entered May 14, 2026 (Dkt. 18) pursuant to Federal Rule of Civil Procedure 60(b)(1), and, in the alternative, pursuant to Federal Rule of Civil Procedure 60(b)(6);

16

3. REINSTATE this action upon the Court's active docket;

4. ACCEPT for filing the executed Joint Discovery and Case Management Plan attached hereto as Exhibit A, or, in the alternative, direct Plaintiff to refile the Plan as a stand-alone docket entry;

5. RESET the Initial Pretrial and Scheduling Conference at the Court's earliest convenience; and

6. GRANT such other and further relief, at law or in equity, to which Plaintiff may show herself justly entitled.

Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: _____

**Dustin Webber**
State Bar No. 24118584
S.D. Tex. Bar No. 3545474
1111 Bagby Street, Suite 2100
Houston, Texas 77002
Telephone: 945-330-0239
Email: dustin.webber@nelsonmullins.com

**ATTORNEY FOR PLAINTIFF LAURA HOFF**

17

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that on May 18, 2026, counsel for Plaintiff attempted to confer with counsel for Defendants, regarding the relief requested in this Motion.  It is unknown whether Defendants are opposed to the relief requested because Defendant's counsel's email mailbox appears to be full, as shown by Exhibit C.

_____
**Dustin Webber**

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, a true and correct copy of the foregoing instrument was served upon all counsel of record by the Court's CM/ECF electronic-filing system, and, as a courtesy, by electronic mail to:

Cornelius "Carl" Lewis
The Lewis Law Firm, Inc., LPA
119 East Court Street
Cincinnati, Ohio 45202
carllewislaw@gmail.com
*Attorney for Defendants Michael Ealy and Nassau Investments, LLC*

_____
**Dustin Webber**